# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY TRAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10 C 3011 |
| | ) | |
| THE CITY OF CHICAGO, et al., | ) | Honorable Joan B. Gottschall |
| | ) | |
| Defendants, | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Anthony Travis filed a four-count amended complaint against the City of Chicago, the Chicago Fire Department ("the Department"), and seven individual defendants who serve the Department as Commissioners, Deputy and Assistant Commissioners, Department Chiefs, and Supervisors. He alleges violations of 42 U.S.C. § 2000e, *et seq.* ("Title VII") and 42 U.S.C. § 1983, as well as Illinois tort law. Now before the court is the City's motion to dismiss the complaint in part pursuant to Federal Rule of Civil Procedure 12(b)(6). By the parties' agreement, the court dismisses all claims against the Department and the individual defendants in their official capacities and the Title VII (Count I) claims against the individual defendants. For the reasons stated below, the court dismisses Travis's § 1983 against the City (Count II) without prejudice. The court also dismisses his state-law claims (Counts III & IV). Travis's Title VII claim against the City stands, as do his § 1983 claims against five of the defendants in their individual capacities.

# I. BACKGROUND

Travis has worked as a Senior Air Mask Technician for the Department since 1995. According to his complaint, he has been the only African-American in that position during that time. Travis alleges that: (I) the defendants discriminated against him on the basis of race, treated him less favorably than similarly situated white employees, and retaliated against him for complaining about his supervisors' conduct, in violation of 42 U.S.C. § 2000e, *et seq.* ("Title VII") and 42 U.S.C. § 1983; (II) the City and the Department maintained policies of deliberate indifference to the constitutional rights of African-American Department employees, in violation of 42 U.S.C. § 1983; (III) the defendants intentionally inflicted emotional distress upon him, in violation of Illinois law; and (IV) the defendants tortiously interfered with his employment relationship and prospective economic advantage, in violation of Illinois law.

In response to the City's motion to dismiss, Travis has voluntarily dismissed part of his complaint. He concedes that his claims against the Department should be dismissed because it is not an entity separate from the City, that his claims against the individual defendants in their official capacities should be dismissed because they are redundant, and that he cannot bring Title VII claims against individual defendants. (Pl.'s Mem. in Resp. to Mot. to Dismiss 2 n.1, ECF No. 32.) He also concedes that he cannot recover punitive damages against the City. (*Id.*) He further clarifies that his Title VII claims are not based on "pattern and practice," but only on incidents involving himself as an individual. (*Id.* at 9.) Travis argues, however, that his Title VII and § 1983 claims should stand, along with his state-law claims. Defendants now move the court to dismiss

the § 1983 and state-law claims, although they do not challenge the Title VII claim at this time.

## II. LEGAL STANDARD

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of the motion to dismiss, the court takes all facts alleged in the plaintiff's complaint as true and draws all reasonable inferences from those facts in favor of plaintiff, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

## III. ANALYSIS

### A. Travis's § 1983 Claims

Travis asserts § 1983 claims against the City of Chicago and against five defendants in their individual capacities. The individual defendants are Michael Callahan (Deputy Fire Commissioner), Emmett O'Donnell (Chief of Equipment and Supply Department), Robert Anthony (Chief of Breathing Service Apparatus Department), Debbie Biniak (Supervising Senior Air Mask Technician), and Chuck Killman (Assistant Commissioner, Bureau of Employee Relations).

### 1. § 1983 Claims against Individual Defendants

Travis seeks to maintain his suit against defendants Callahan, O'Donnell, Anthony, Biniak, and Killman in their individual capacities. The defendants may be held liable for their personal actions if those acts were taken in violation of § 1983. To recover damages, Travis must establish the defendants' personal responsibility for a deprivation of his constitutional rights. *See Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012) (stating that individual § 1983 liability is premised on the wrongdoer's personal participation in an alleged constitutional deprivation). The Seventh Circuit has explained that "an official satisfies the personal responsibility requirement if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982).

The defendants argue that Travis has failed to allege that he suffered a constitutional deprivation, that any of the defendants were personally responsible for a constitutional violation, or that the defendants acted knowingly, willfully, or recklessly in violation of Travis's constitutional rights. The court has reviewed Travis's complaint and will summarize his allegations against each individual defendant to determine whether Travis has sufficiently alleged a § 1983 violation against each of them.

Killman (Assistant Commissioner, Bureau of Employee Relations): On June 16, 2009, Killman reprimanded Travis for reporting discriminatory conduct by other defendants. On September 24, 2009, Killman suspended Travis for three days for insubordination for reporting illegal and discriminatory conduct. On December 11, 2009, Killman detailed Travis to an assignment in violation of his collective bargaining

agreement, although he had more seniority than white workers who were not detailed to the assignment. On December 14, 2009, Killman suspended Travis for five days for alleged insubordination, again for reporting illegal and discriminatory conduct by the other defendants.

Anthony (Chief of Breathing Service Apparatus Department): On September 24, 2009, Anthony suspended Travis for three days for insubordination because of his race and in retaliation for reporting the illegal and discriminatory conduct of Anthony and Biniak. On December 24, 2009, he suspended Travis for five days for the same reasons. On September 10, 2009, he reprimanded Travis for reporting the illegal conduct of Biniak, in retaliation for Travis's complaints of discrimination. On June 4, 2009, he suspended Travis for three days for alleged insubordination toward Biniak and for not completing assigned work tasks, when similarly situated white employees were not so disciplined. On April 18, 2009, he reprimanded Travis and issued him a pre-disciplinary hearing letter for reporting the illegal use of a Department vehicle by Biniak. On May 8, 2009, he sent Travis for training and certification on repairing oxygen canisters because of his race and in retaliation for reporting discriminatory conduct, when no white employees were sent for the same training.

O'Donnell (Chief of Equipment and Supply Department): On June 19, 2009, O'Donnell reprimanded Travis in retaliation for reporting the discriminatory conduct of Anthony and Biniak. On October 7, 2009, he denied a grievance submitted by Travis when other white employees' similar grievances were considered more favorably. He implied to Travis that any further grievances would be considered insubordination.

Callahan (Deputy Fire Commissioner): On September 10, 2009, Callahan reprimanded Travis for reporting the illegal conduct of Biniak and told him to no longer report such conduct, because of Travis's race and in retaliation for reporting discriminatory conduct.

Biniak (Supervising Senior Air Mask Technician): Biniak reprimanded Travis on April 18 and April 21, 2009, for reporting Biniak's unauthorized use of a work vehicle and for allegedly not completing assigned tasks. Similarly situated white employees were not so disciplined. On June 4, 2009, she suspended Travis for three days for alleged insubordination and for not completing assigned tasks, even though similarly situated white employees were not suspended for similar behavior. On September 8, 2009, she reprimanded Travis for failing to complete work, even though similarly situated white employees were not so disciplined for such behavior.

The court finds that Travis's complaint "contain[s] factual allegations identifying (1) who discriminated against [him]; (2) the type of discrimination that occurred; and (3) when the discrimination took place." *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). These allegations give the defendants sufficient notice of what Travis's claims are and plausibly suggest that he has a right to relief. *See Twombly*, 550 U.S. at 555. Although the court makes no determination about the ultimate merits of Travis's allegations, Travis has stated claims against the individual defendants that are plausible on their faces. Thus, the court denies the City's motion to dismiss Travis's § 1983 claims against the individual defendants in their personal capacities.

## 2. The *Monell* Claim

Section 1983 imposes liability on state and municipal governments for their own unconstitutional policies. *See Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658 (1978). The "official policy" requirement for liability under § 1983 serves to "distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). To prevail on a *Monell* claim, Travis must show either that adverse actions against him were taken by someone with final policymaking authority, or that "the City maintained a policy or custom of discrimination." *Palka v. City of Chicago*, 662 F.3d 428, 432 (7th Cir. 2011). Travis does not argue that actions were taken against him by anyone with policymaking authority. Rather, his response to the City's motion to dismiss argues that the City had "an illegal municipal policy" of "deliberate indifference to the discrimination, harassment, and retaliation he was forced to endure." (Pl.'s Mem. in Resp. to Mot. to Dismiss 10.)

To survive a motion to dismiss under *Twombly* and *Iqbal*, Travis must "'provid[e] some specific facts'" to support the legal claims asserted in the complaint." *McCauley*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). The Seventh Circuit has explained that where the "facts" asserted by a plaintiff "are actually legal conclusions or elements of the cause of action," the court may disregard them as part of its 12(b)(6) analysis. *Id.* The court therefore evaluates Travis's allegations to determine which allegations include specific facts relevant to his claim of an illegal municipal policy.

Travis alleges as part of Count II that he suffered the incidents of discrimination, harassment, and retaliation by Callahan, O'Donnell, Anthony, Biniak, and Killman discussed in the previous section, and that the City responded with deliberate indifference to his complaints regarding these incidents. His complaint states:

> 22. After Defendants CALLAHAN's, O'DONNELL's, ANTHONY's, BINIAK's and KILLMAN's actions as herein described occurred, Plaintiff, TRAVIS made numerous complaints to Defendants, CHICAGO and/or CFD and sought to report their actions. No favorable response has ever been made by CHICAGO and/or CFD to TRAVIS regarding said complaints.
>
> 23. At all relevant times, Defendants, CHICAGO, CFD, BROOKS and HOFF developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of African American employees of the CFD which caused the violation of the rights of Plaintiff, TRAVIS.
>
> 24. It was the policies and/or customs of Defendants, CHICAGO, CFD, BROOKS and HOFF to inadequately supervise and train its employees, including Defendants, CALLAHAN, O'DONNELL, ANTHONY, BINIAK and KILLMAN, thereby failing to adequately discourage further constitutional violations on the part of its employees.
>
> 25. As a result of the above described policies and/or customs, Defendants, CHICAGO's, CFD's, BROOKS' and HOFF's employees, including Defendants, CALLAHAN, O'DONNELL, ANTHONY, BINIAK and KILLMAN, believed their actions would not be properly monitored by supervisory personnel and their misconduct would not be investigated or sanctioned, but rather would be tolerated and accepted.
>
> 26. The above described policies and/or customs demonstrated a deliberate indifference on the part of policymakers of Defendants, CHICAGO, CFD, BROOKS and HOFF to the constitutional rights of its employees, and were the cause of the violations of the rights of Plaintiff, TRAVIS as alleged herein. Accordingly, Plaintiff, TRAVIS claims damages for the injuries set forth above against Defendants, CHICAGO, CFD, BROOKS and HOFF under 42 U. S. C. § 1983.

(First Am. Compl. ¶¶ 22-26.)

The court first notes that much of the language in these paragraphs consists of the legal elements of a *Monell* claim; "they are not factual allegations and as such contribute nothing to the plausibility analysis under *Twombly/Iqbal*." *McCauley*, 671 F.3d at 618. The court thus disregards the allegations of "customs or policies of deliberate indifference," and "inadequate supervision and training," as this is merely boilerplate *Monell* language. The only specific factual allegations that the court identifies in the above paragraphs are Travis's allegations of discriminatory conduct by the individual defendants and his allegation that he "made numerous complaints to Defendants, CHICAGO and/or CFD and sought to report [the individual defendants'] actions. No favorable response has ever been made by CHICAGO and/or CFD to TRAVIS regarding said complaints." (First Am. Compl. ¶ 22.)

Although Travis has alleged specific facts regarding the incidents of discrimination and retaliation he allegedly suffered at the hands of the individual defendants, the court find that Travis's allegations about the City's unlawful policy are insufficient. Travis does not identify to whom he complained about these incidents, when the complaints were made, or the form of the complaints. And although Travis states that he himself made complaints, he does not identify any other people who complained to the City about discrimination, harassment, and retaliation. The court cannot conclude from the mere allegation that Travis made complaints and did not get a favorable response that City policymakers were aware of the discriminatory behavior of the individual defendants and condoned it, that the discriminatory activity was so persistent and widespread that City policymakers should have known about the behavior, or that the City failed to monitor or train its employees. *See, e.g.*, *Latuszkin v. City of*

*Chicago*, 250 F.3d 502, 505 (7th Cir. 2001) ("The complaint does not allege any facts tending to show that City policymakers were aware of the behavior of the officers, or that the activity was so persistent and widespread that City policymakers should have known about the behavior.").

Travis has failed to "give enough details about the [City's illegal policy] to present a story that holds together." *See Swanson*, 614 F.3d at 404. The court therefore dismisses Travis's *Monell* claim against the City without prejudice. If Travis can be more specific in his allegations, he may amend his complaint within 30 days.

**B. Travis's State-Law Tort Claims**

The City argues that Travis's state-law tort claims of Intentional Infliction of Emotional Distress (Count III) and Tortious Interference with Prospective Economic Advantage (Count IV) are inextricably linked to his discrimination claims and must be dismissed because they are preempted by the Illinois Human Rights Act ("IHRA").

The IHRA gives the Illinois Human Rights Commission exclusive jurisdiction over civil-rights violations. 775 Ill. Comp. Stat. 5/8-111(D) ("Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act."). Employment discrimination is defined in the act as incidents involving "promotion, renewal of employment . . . discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status." *Id*. 5/2-102(A). Judicial participation in IHRA claims is limited to the review of final orders issued by the Commission. *Flaherty v. Gas Research Inst*., 31 F.3d 451, 458 (7th Cir. 1994); 775 Ill. Comp. Stat. 5/8–111(B)(1)).

A state-law tort claim is preempted by the IHRA when the act "furnish[es] the legal duty that the defendant was alleged to have breached." *Bannon v. Univ. of Chicago*, 503 F.3d 623, 630 (7th Cir. 2007). The plaintiff's claim is preempted when his allegations "implicate only a duty provided by the IHRA, such as the duty of employers to refrain from discriminating against employees on the basis of their race." *Id.* As the Supreme Court of Illinois has stated, framing a claim in terms of a tort does not "alter the fundamental nature of [a] cause of action." *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill.2d 507, 639 N.E.2d 1273, 1277 (1994); *see also Veazey v. LaSalle Telecomms., Inc.*, 334 Ill.App.3d 926, 779 N.E.2d 364, 371 (2002) (claim against employer for terminating plaintiff "because he was Black" had no tort basis independent of the IHRA and was preempted).

In this case, Travis's state-law claims are based on his allegations that the defendants caused him emotional distress and interfered with his economic, business, and employment relationships through their "conduct as alleged herein." (First Am. Compl. ¶¶ 31, 37.) That conduct was the defendants' allegedly discriminatory and retaliatory behavior. In other words, it was the defendants' breach of their duty under the IHRA to refrain from discrimination that Travis claims caused his emotional distress and interfered with his prospective economic advantage. There is no independent basis for the state-law tort claims other than the alleged discriminatory and retaliatory acts, because the behavior would not be a tort in itself were the motivation for it not discriminatory. *Cf. Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006) (holding that defendant's "extreme behavior" constituted "a tort independent of any duties not to discriminate").

Travis's tort claims are inextricably linked to his discrimination claims and are preempted by the IHRA. The court need not address the City's additional argument that some of the claims are untimely. Counts III and IV of the complaint are dismissed with prejudice.

### IV. CONCLUSION

The City's motion to dismiss Travis's amended complaint is granted in part and denied in part. Travis has voluntarily dismissed his claims against the Department and the individual defendants in their official capacities and the Title VII (Count I) claims against the individual defendants. The court dismisses Travis's § 1983 claim against the City (Count II) without prejudice and grants Travis 30 days to amend the complaint if he can allege specific facts that support the claim. The court also dismisses his state-law claims (Counts III & IV). Travis's Title VII claim and his § 1983 claims against defendants Callahan, O'Donnell, Anthony, Biniak, and Killman in their individual capacities (Count I) will move forward.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: June 29, 2012