**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY TRAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Joan B. Gottschall |
| v. | ) | |
| | ) | No. 10 CV 3011 |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Anthony Travis ("Travis"), an employee of the City of Chicago ("City"), sued the City and individual defendants Michael Callahan ("Callahan"), Emmett O'Donnell ("O'Donnell"), Robert Anthony ("Anthony"), Debbie Biniak ("Biniak"), and Chuck Killman ("Killman"), alleging racial discrimination, retaliation, and a hostile work environment. On September 30, 2014, this court issued an opinion ruling on Defendants' motion for summary judgment. In that opinion, the court granted defendants' motion for summary judgment as to Travis's retaliation claim, but denied summary judgment as to Travis's discrimination and hostile work environment claims.

On October 31, 2014, individual defendants Callahan, O'Donnell, Anthony, Biniak, and Killman (collectively "Individual Defendants") filed a motion to clarify the court's order on summary judgment.

## I. FACTS

For the purposes of the motion for clarification, familiarity with the court's September 30, 2014 order is assumed. Thus, the court will briefly recap the relevant facts.

Travis, an African-American male, has been an employee of the Chicago Fire

Department ("CFD") since December 1994. In January 1997, the CFD promoted Travis to his current position of Senior Air Mask Technician ("SAMT"). Travis's duties are to repair the safety equipment used by CFD members. From 1997 onward, Travis has reported to Biniak, the Supervising Air Mask Technician. Biniak reports to Anthony, the Deputy District Chief of the Air Mask Division. Anthony, in turn, reports to Deputy Fire Commissioner Callahan and District Chief O'Donnell.

Travis bases his claims in part on three separate disciplinary actions: (1) a three-day suspension in June 2009, (2) a six-day suspension in December 2009, and (3) a reassignment to the Support and Logistics Division ("SLD") from December to February 2009. Travis denies that either the suspensions or the reassignment was warranted, and asserts that they were the result of discrimination. Defendants state that Travis's suspensions and reassignment resulted from insubordination. Namely, defendants claim that Travis: told Biniak to "shut up"; responded "Am I the only one who can do this?" when asked to complete an assignment; failed to complete an assignment because he was working on something else at the time; and failed to enter his work on a daily basis on a computer database despite being ordered to do so. These incidents corresponded to Travis's suspensions and reassignment to SLD. He remained at SLD from December 21, 2009 until February 16, 2010.

The disciplinary system at the Fire Department is multifaceted and involves several individuals. Biniak admits in her deposition that she "initiated" all of Travis's discipline. (Pl.'s Exhibits, Biniak Depo. at 141:10-17, ECF No. 76.) With respect to Travis's suspensions, Biniak described the disciplinary process as follows: Killman presented disciplinary options for Travis to Biniak and Anthony to discuss, and Anthony made the

final disciplinary decision. (*Id.*) With respect to Travis's reassignment to SLD, Callahan authorized the decision and Killman and O'Donnell contributed to the discussions concerning the decision. (Def.'s Memo at 32, ECF No. 80.) On February 12, 2010, following this string of disciplinary actions, Travis filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of race in violation of Title VII and 42 U.S.C. § 1983 in connection with the disciplinary measures taken against him.

Travis alleges that the treatment he received at work, combined with the disciplinary actions taken against him and other supervisors' failure to take action against Biniak or intervene to stop the allegedly discriminatory conduct, is unlawful pursuant to the two statutes cited in his EEOC complaint. Specifically, Travis alleges that the discipline took place during a small window of a long period of Biniak making derogatory remarks about African-Americans. Travis alleges that Biniak referred to African-Americans as "shines" and stated that a nearby parking lot was a "shine" parking lot. He further alleges that Biniak told Travis that all African-Americans lived in the projects, were drug addicts, and were in gangs. Reportedly, Biniak made these types of comments for "a period of years," "repeatedly," and "for ten plus years at least." (Opinion at 12, ECF No. 100.) Biniak also allegedly spoke to Travis by changing her voice to what Travis describes as that of "an uneducated 'ghetto-type African-American person,'" and accused an African-American summer intern of belonging to a gang because of a design cut into his eyebrow. (*Id.* at 6.) Travis also testified in his deposition that Biniak made disparaging remarks to him "all the time" and that he cannot "walk in the door of that place [of employment], even to this day, without her saying anything

really derogatory and nasty to me." (*Id*.)

Furthermore, Travis alleges that Biniak made hostile comments to him regarding a sewer drain. Travis's workstation is located above a sewer drain, and on several occasions, raw sewage backed up into his workspace. When he complained to Biniak about this, Biniak allegedly told him to brush his teeth with sewer water and jump out the window to avoid the sewage.

## II. LEGAL STANDARD

The court applies the summary judgment standard to clarify the September 30, 2014 opinion. Summary judgment is "appropriate when there are no genuine issues of material fact and judgment as a matter of law is warranted for the moving party." *Gross v. PPG Industries, Inc.*, 636 F.3d 884, 888 (7th Cir. 2011) (citing Fed. R. Civ. P. 56(a).) "[A] factual dispute is 'genuine' only if a reasonable jury could find for either party." *SMS Demag Aktiengsellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). The court ruling on the motion construes all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III. ANALYSIS

The issue before the court is to clarify whether Individual Defendants' motion for summary judgment as to the discrimination claim was granted or denied in the September 30, 2014 opinion. For the reasons discussed below, Individual Defendants' motion for summary judgment with respect to the discrimination claim is denied, and their motion for summary judgment with respect to the hostile work environment claim is granted.

**A.** Discrimination Claim with Respect to Individual Defendants

In its September 30, 2014 opinion, the court wrote:

> [T]he court concludes that Travis has sufficiently disputed defendants' facts to overcome summary judgment on his discrimination claim under the direct method. A reasonable fact-finder could conclude that there is a "convincing mosaic" showing that Travis's detail to SLD or his suspensions [with the exception of the May 2008 suspension] were the result of intentional discrimination . . . [t]he defendants' motion for summary judgment is denied as to Travis's claim of discrimination.

(Memo. and Order at 12-13, ECF No. 100.) Nonetheless, Individual Defendants seek clarification as to whether they, as individuals, were granted or denied summary judgment. The court denies summary judgment as to all Individual Defendants on the issue of discrimination (Callahan, Killman, O'Donnell, Anthony, and Biniak).

In his brief in opposition to the motion for summary judgment, Travis argues that Individual Defendants:

> [E]ither actively discriminated against Travis or allowed such discriminatory behavior to continue unabated after they became aware of it. Specifically . . . Biniak . . . harassed, discriminated and retaliated against Travis by subjecting him to unwarranted discipline . . . Anthony, Killman, Callahan, and O'Donnell . . . all approved of the unwarranted discipline inflicted upon Travis.

(Pl.'s Resp., ECF No. 88, at 21.) Travis also alleges that Anthony, Killman, Callahan, and O'Donnell failed to conduct an investigation of Travis's charges as required under the City's regulations. (*Id.*)

The Individual Defendants make both generalized and personalized arguments as to why their motion for summary judgment should be granted. In general, Individual Defendants argue that Travis is required "to come forward with evidence suggesting that each of the Individual Defendants violated [Travis's] constitutional rights and did so intentionally" and that Travis has failed to carry this burden. (Def. Memo. at 31, ECF No.

80.) Individual Defendants collectively argue that there is no evidence that any individual acted with nefarious discriminatory purpose. The Individual Defendants also put forth arguments as individuals.

Deputy Fire Commissioner Callahan argues he is entitled to summary judgment because he did not personally participate in any intentional racial discrimination against Travis, and only approved the measure to re-assign Travis to a different division to "[save] [Travis's] job." (*Id*.) He further asserts that, "there is no evidence that [Callahan] was involved in any way in any decision to suspend [Travis]." (*Id*. at 32.)

District Chief O'Connell argues he is entitled to summary judgment because the record is devoid of any evidence that O'Donnell "ever made any racially offensive comments" to Travis. (*Id*. at 33.) Further, although the court made clear in its September 30 Order that the reassignment to SLD is considered an "adverse employment decision," O'Donnell recommended against the reassignment. In short, O'Donnell argues that he "lacks the direct and personal involvement necessary to establish liability under Section 1983." (*Id*.)

Deputy District Chief Anthony argues he is entitled to summary judgment because the evidence suggests he did nothing more than "participate in recommending appropriate discipline in order to correct [Travis's] poor work performance and behavioral issues" and that the discipline was motivated only by Travis's "performance deficiencies." (*Id*. at 33-34.) Anthony also argues he "lacked the final authority to suspend or detail [Travis] – the most he could do was recommend the suspensions and detail." (*Id*. at 34) Anthony allegedly made a comment that Travis was "playing the race card" and Anthony argues that this is not an epithet and thus not a basis for liability. (*Id.*)

He further argues that if Biniak's comments are considered racial harassment that he did not deliberately or recklessly intend or allow Biniak's alleged conduct. (*Id*. at 35.)

Supervising Air Mask Technician Biniak argues that she is entitled to summary judgment for several reasons. First, she argues that the comments she made about Travis brushing his teeth "in sewer water," "jumping out a window," and about an African-American intern's eyebrow design were "not racial in nature" and thus not actionable under § 1983. (*Id.*) She also argues that her alleged remarks about "shines," gangs, and drug addicts, if considered racially insensitive, were not directed at Travis. (*Id.*) She further argues that Travis has failed to present evidence that her comments were "severe or pervasive." (*Id*.) Biniak also asserts that she was not directly responsible for Travis's suspensions or detail to a different unit, and that she only had the authority to "make an initial recommendation for [Travis's] suspensions (she had no authority to issue discipline) and she did had (sic) no role in making the final decision on the level of discipline he received." (*Id*. at 36.)

Assistant Commissioner Killman argues that he is entitled to summary judgment because he never made any disparaging comments toward Travis, nor did he initiate or issue any of the discipline Travis received. Killman also argues that although he was involved in the decision to detail Travis to SLD, he did so to "help save [Travis's] job" and he was "not the final decisonmaker on the detail." (*Id*.)

It is not necessary to re-articulate the court's reasons for finding that Travis alleged facts sufficient to create a "convincing mosaic" from which a reasonable factfinder could infer intentional discrimination, since that reasoning is discussed at length in the September 30th order. The question, then, is the extent to which each individual

defendant should stand trial for individual liability on this count.

The reach of liability in Title VII cases has been addressed directly by the Seventh Circuit, and the Supreme Court has upheld the Seventh Circuit's approach. In *Staub v. Proctor Hosp.*, 131 S.Ct. 1186 (2011), the Supreme Court endorsed the Seventh Circuit's "cat's paw" theory of employer liability. This theory supports holding an employer vicariously liable under 42 U.S.C. § 1983. *Smith v. Bray*, 681 F.3d 888, 897 (7th Cir. 2012) (citations omitted). The gist of cat's paw liability is that liability may be imposed on an employer "where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action." *Id.* (citations omitted). The Seventh Circuit emphasizes that the favored approach to applying the cat's paw theory does not require a biased employee to be the "singular influence" over the ultimate decisionmaker, but instead applies the theory when the biased employee's influence over the ultimate decisionmaker's decision was significant or substantial. *See Schandelmeier-Bartels v. Chicago Park District*, 634 F.3d 372, 379-381 (7th Cir. 2011).

In *Schandelmeier-Bartels*, a Chicago Park District employee was fired after an incident where the plaintiff-employee ("Schandelmeier"), a Caucasian woman, was told by her immediate supervisor ("Adams"), an African-American woman, that it was inappropriate for Schandelmeier to call the Department of Child and Family Services after overhearing the way a woman physically disciplined her nephew at the summer camp where Schandelmeier worked. *Id.* at 377. Adams reportedly told Schandelmeier that, "this is the way we [African-Americans] discipline children in our culture" and asked "who [was Schandelmeier] to try to tell this woman how to raise her child?" *Id.*

This question was based on the fact that Schandelmeier was white, and Adams believed the Schandelmeier's race made her intervention inappropriate. *Id*.

The court resolved the question of whether individuals who were several supervisory levels removed from the biased employee could be held liable under the cat's paw theory. *Id*. at 381. One such defendant, McDonald, argued that she should not be held liable because she was three supervisory levels removed from Schandelmeier and had very little contact with the plaintiff or opportunity to observe her behavior. *Id*. In making employment decisions, McDonald "relied entirely on information from others." *Id*. McDonald admitted that the decision to fire Schandelmeier included "input" from Adams and that "the decision ultimately was a 'joint' decision." *Id*. The court found that the jury could have found that "Adams's prejudices could be imputed to McDonald if it [could be] shown that Adams concealed relevant information from McDonald or fed false information to her in order to influence her decision." *Id*. at 385. Thus, the court found, the case could survive a motion for summary judgment.

In this case, Travis alleges that Biniak harbored racial animus against him, evidenced by her alleged remarks regarding "shines," derogatory generalizations about African-Americans, her admittedly unprofessional remarks towards Travis about the sewer water in or around his office, and her "joke" that Travis should jump out the window.

Both parties admit that Biniak's listed duties do not include administering discipline to Air Mask Technicians. (Pl.'s Resp. to 56.1 Statements at ¶ 20, ECF No. 90.) In Biniak's deposition, however, Biniak indicated that she does play a role in the disciplinary process, although she is not the final decisionmaker. This is reflected in the

following colloquy:

> Q: And just to be clear on the [suspension] process, are you [Biniak] the final decision maker on the number of days or the extent to which Mr. Travis is disciplined?
> A: Chuck Killman gives us a – like you can have, you know, chose (sic) this, this, or this. Chief Anthony ultimately has the decision. Me and Chief Anthony (sic) will discuss it, but he has the ultimate say on what the discipline will be.

(Pl.'s Exhibits, Biniak Depo. at 141:10-17, ECF No. 76.)

Biniak also stated that it was her decision to "initiate discipline." (*Id*. at 142:1-6.) Biniak's testimony elucidates her role in the disciplinary process, and this testimony, in conjunction with undisputed material facts, demonstrates that each of the named Individual Defendants had a role in Travis's discipline.

It is undisputed that Anthony's duties include "the management and discipline of personnel at the Air Mask Facility" where Travis works. (Pl.'s Response, ECF No. 90, ¶ 21.) Callahan, unlike Anthony, did not directly authorize Travis's suspensions, but he did "authorize[] the decision to detail [Travis] to SLD in December 2010." [1] (Def.'s Memo. at 32, ECF No. 80.) O'Donnell was involved in discussions concerning Travis's discipline.[2] (*Id*. at 33.) Like O'Donnell, Killman was also involved in the decision to detail Travis to SLD, and he actually recommended the detail. (*Id*. at 36-37.) In short, all named Individual Defendants considered the information supplied by Biniak (since she admits to initiating all of the adverse employment actions Travis experienced) and played some role in the decisions to discipline Travis.

The question at this stage of the proceedings, then, is whether these relationships

---

[1] Despite Callahan's argument that his only intent was to save Travis's job by ordering this detail, consistent with its September 30th opinion, the court considers the reassignment to SLD an "adverse employment action." (Opinion, ECF No. 100, at 10.)

[2] O'Donnell argues that he advised against Travis's reassignment. Whether O'Donnell advised for or against reassigning Travis, however, does not speak to the legal issue of whether he was a decisionmaker.

and actions are sufficient to overcome a motion for summary judgment. The court finds that they are. Under the cat's paw theory of liability, the factfinder looks to see whether information coming from an allegedly biased source influenced the decisionmaker's ultimate decision to take adverse employment action against an employee. *See Schandelmeier-Bartels*, 634 F.3d at 379-81. It may be the case that some of the individuals named took no action with regard to Travis's discipline, but the court does not find that Defendants' brief illuminates the byzantine disciplinary system enough to grant Individual Defendants' motion for summary judgment. For this reason, the motion for summary judgment on the discrimination claim with respect to Defendants Callahan, O'Donnell, Anthony, Biniak, and Killman is denied.

Individual Defendants also argue that they are entitled to qualified immunity because their "conduct did not violate clearly established rights of which a reasonable person would have known." (Def.'s Memo, ECF No. 80, at 37.) Individual Defendants assert that each individual was performing job-related duties when suspending Travis or reassigning him to separate division. (*Id*.) Travis rejects this defense, arguing that Individual Defendants' conduct violated his clearly established rights.

Officials are entitled to qualified immunity for conduct that "does not violate clearly established constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome a defense of qualified immunity, Travis bears the burden of demonstrating that (1) the facts, taken in the light most favorable to Travis, show that Individual Defendants violated Travis's statutory or constitutional rights, and (2) the statutory or constitutional right was clearly established at the time of the alleged violation. *See Wheeler v. Lawson*, 539 F.3d 629,

639 (7th Cir. 2008) (citation omitted).

The facts taken in the light most favorable to Travis indicate that a factfinder could determine that Biniak demonstrated racial animus toward Travis in a manner that violates Travis's statutory and constitutional rights. As discussed above, a factfinder could also reach the conclusion that since Biniak initiated all discipline against Travis, her alleged racial hostility toward Travis played an inappropriate role in the discipline administered against him. This would constitute a violation of Travis's clearly established rights, and thus Individual Defendants are not entitled to qualified immunity.

**B.  Hostile Work Environment with Respect to Individual Defendants**

"Title VII authorizes suits *only* against the employer. Individual people who are agents of the employer cannot be sued as employers under Title VII." *Passananti v. Cook County*, 689 F.3d 655, 662 n. 4 (7th Cir. 2012) (emphasis in original). Simply for purposes of clarification, the hostile work environment claim is dismissed as to the Individual Defendants.

## IV. CONCLUSION

For the reasons discussed above, the court clarifies its September 30, 2014 order by denying Individual Defendants' summary judgment claim with respect to the discrimination claim but granting the Individual Defendants' motion for summary judgment as to the hostile work environment claim.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED:  December 16, 2014